Herbert Shapiro, J.
In this summary proceeding landlord seeks to recover possession of an apartment in a multiple dwelling alleging that rent has not been paid for the months of April, May and June, 1975 at the rate of $130.50 per month; for the month of July, 1975 at the rate of $138.33; and for the months of August, September and October, 1975 at the rate of $134.86 per month.
Tenant has interposed an answer containing a general denial and several affirmative defenses which allege, in substance, as follows: (1) that the rent sought to be collected is in excess of the permissible maximum rent fixed by the Office of Rent Control; and (2) that the landlord has failed to file a registration statement with the Office of Code Enforcement as required by section 325 of the Multiple Dwelling Law and section D26-41.01 et seq. of the Administrative Code of the City of New York. Two counterclaims are also asserted seek *824 ing to recover for alleged rent overcharges; one bottomed on rent collected in excess of the permissible maximum rent and one bottomed on the alleged fraud of the landlord in submitting false statements to the Office of Rent Control.
Upon a pretrial conference with the court, the parties stipulated to certain facts and agreed that a motion for summary judgment with respect to the remaining issues would be made by the tenant. That motion is the one now under consideration.
Some of the issues having been put to rest by stipulation there remain only two determinations to be made. They are (1) what is the legally permissible maximum rental with respect to the months for which rent is sought in the petition and (2) has the respondent asserted a valid defense to the effect that landlord may not prevail in this proceeding by reason of its failure to properly and timely file a registration statement as required by section 325 of the Multiple Dwelling Law and section D26-41.01 et seq. of the Administrative Code of the City of New York.
In support of landlord’s position that the rents demanded in the petition are within legally permissible limits, landlord submits certified copies of several documents on file in the Office of Rent Control. It is contended by landlord that such documents demonstrate that the rents sought to be recovered in this nonpayment proceeding are no more than are legally permissible. I find that such is the case.
The only argument advanced by tenant against such a finding is that the records submitted were not "certified” by the Office of Rent Control. Tenant attempts to spell out such lack of "certification” by referring to the language of the stamp affixed to the documents by the District Rent Control Office and signed by the District Rent Director. That stamp reads as follows: "I hereby certify that the attached document is a true copy of a registration statement, or of an order, filed with this office, of which I have the legal custody, or which was in the records of the temporary State Housing Rent Commission, now in the custody of the City Rent and Rehabilitation Administrator pursuant to the Local Emergency Housing Rent Control Act .... The acceptance of a registration statement, and the certification thereof, does not mean that this office certifies to the correctness of the various statements made therein.”
Respondent urges that such language precludes using a *825 document so stamped as a basis for determining the maximum rent collectible. I disagree. It would appear that the "disclaimer” at the end of the statement applies only to "registration statements”, i.e. documents submitted ex parte by the landlord for filing with the Office of Rent Control and not to documents prepared by the Office of Rent Control itself. That being so, the documents prepared by the rent office and which are "certified”, reveal the following history of the collectible rental for the subject apartment: as of December 31, 1973 that figure was $102.76. The rental was then increased by 7.5% for the calendar year 1974, to the sum of $110.47. To that sum was then added two increases (for additional capital improvements) in the amounts of $8.90 and $3.80 resulting in a new maximum rental of $123.17 for the balance of the year 1974. The 1975 increase of 7.5% was' then added and a new collectible rental of $132.41 established. A rental decrease of $.75 per month was then ordered against the landlord for failure to make certain repairs. The resulting rental of $131.66 was then subject to the "fuel pass-a-long” increase of $7.76 a month, bringing the maximum rent collectible to $139.42.
As indicated, my analysis of the meaning of the Office of Rent Control "Certification” is such as to cause me to conclude that the only document relevant to the rent history aforesaid which may be questioned in this proceeding is the landlord’s report concerning the "fuel pass-a-long” increase. That is so since it is a unilateral submission by the landlord not passed upon on the merits by the rent office. However, while the propriety of the "fuel pass-a-long” increase as asserted by landlord is subject to review by this court, there is no issue with respect hereto. The tenant fails to contradict any of the computations therein contained or raise any question with respect thereto. That being so, the rental computations of that report must be accepted.
Concluding,. as I do, that the rentals sought to be recovered in the petition are legally permissible, there then remains only one question to be determined — is there merit to the affirmative defense which contends that the landlord failed to timely and properly file the registration statement. That alleged failure is based upon the contention that the statement filed was not filed by the "owner” of the building.
Section 325 of the Multiple Dwelling Law provides in pertinent part as follows: "2. In any city of over one million which, by local law, requires the registration of owners of multiple *826 dwellings and which prescribes penalties, remedies, and sanctions to be imposed for the violation of such local registration requirements, no rent shall be recovered by the owner of a multiple dwelling who fails to comply with such registration requirements”.
Section D26-41.01 et seq. of the Administrative Code sets forth the requirements for the registration of multiple dwelling in the City of New York. Section D26-41.01 of article 41 provides inter alia, that the "owner of a dwelling * * * shall register with the department in accordance with the provisions of this article.”
Subdivision (2) of section D26-41.03 of article 41 requires that the registration statement contain an "identification of the owner by name, residence and business address.” It goes on to state: "If the owner is a corporation, the identification shall include the name and address of such corporation together with the names, residences and business addresses of the officers.”
The registration certificate filed by the landlord herein listed as the owner, "E & O Associates” and indicated 2765-69 Matthews Avenue (the address of the subject building) as the owner’s business address and 43 N. Village Avenue, Rockville Centre, New York as its home address. The managing agent was listed as "Richard Parkoff”; his business address as 2765-69 Matthews Avenue and his home address as 43 N. Village Avenue, Rockville Centre.
In the portion of the form registration statement provided by the Office of Code Enforcement allowing for the insertion of the names of officers of the owner corporation (in cases where such ownership was in a corporate name) there was inserted the names "Ruth Parkoff” and "Bernard Frisch” and their respective addresses. In addition, the word "partners” was added and the words "officers of corporation” were deleted. The statement was signed by "Ruth Parkoff” in the printed space designated as "owner, officer of corporation or lessee”.
In attempting to spell out noncompliance with the registration statute, tenant points out, without contradiction, that the record owners of the subject property and their respective ownership shares are as follows: Bernard Frisch 04); Silvia Bass 04), Ruth Parkoff 04) and Bernard Frisch and Silvia Bass as testamentary trustees 04), all as tenants in common. He then argues that the failure to list each of the record owners and the failure of each to sign the statement are fatal *827 defects and constitutes noncompliance with the registration statute.
Landlord, on the other hand, argues that the designation of "E & O Associates” was indeed the designation of the "owner”. It is so contended since the individual owners conducted the ownership of the building as a partnership known as "E & O Associates”. In support of such statement there is supplied a certified copy of a business certificate which had been filed in the office of the Clerk of Nassau County on November 25, 1970 and which certificate stated that such individual owners were doing business as "E & O Associates”.
In any event, argues the landlord, the spirit of the registration statute has been complied with and the landlord should not be barred from collecting rent in the event a technical omission is found.
The first question to be answered is whether the uncontroverted fact that the registration statement failed to list the names of all the individual owners of the building constitutes such a failure to comply with the registration requirements as to call into play the punitive portion of the statute. I conclude that in the circumstances of this case it does not.
At the outset it should be noted that the apparent purpose of the registration statutes is to enable tenants and governmental authorities to readily contact owners or persons responsible for the operation of multiple dwellings. The reason therefor is obvious. In too many cases, it was well nigh impossible for tenants with grievances to contact anyone who was in a position to respond to their complaints. The same applied to governmental agencies seeking to effect compliance with law. In response to such an undesirable situation, registration statutes were enacted. An over-all reading of the provisions of the appropriate sections of article 41 of the Administrative Code makes it clear that such was indeed the purpose.
By the same token, it does not appear to me that the intent of the registration statute was to punish landlords for any technical oversight not resulting in a frustration of the statutory purpose. Such a result would not only find disfavor with the courts but would serve neither the tenants, the government agencies nor any useful social purpose.
It thus appears that it is not necessary to find absolute and literal compliance with every word of the registration statute. It is my view that in the absence of a showing of bad faith, a *828 substantial compliance with the statute, sufficient to allow for the achievement of the purpose sought to be achieved, should permit the avoidance of the harsh penalties therein provided. This view finds support in the opinion of Judge Lane of the New York County branch of this court in Washington Sq. Professional Bldg. v Leader (68 Misc 2d 72, 75).
As indicated, in the instant case the registration statement filed listed the name of the owner partnership, "E & O Associates”. In addition, it contained the names, addresses and telephone numbers of two of the three individual partners. The statement also contained the name, address and telephone number of the managing agent of the building.
In what respects did the statement as filed fail to comply with the statutory requirements? First, it is contended that the record owners of the building were Bernard Frisch, Silvia Bass and Ruth Parkoff, individually and Bernard Frisch and Silvia Bass as testamentary trustees. And, argues the respondent, these were the names that should have been listed on the registration statement.
The response to this argument is twofold. First, I conclude that for the purposes of registration, the listing of the partnership as owner — where sufficient other identifying information is supplied — is substantial compliance with the statutory requirement. Particularly is this so where there is no statutory direction — unlike the direction addressed to corporations concerning their officers — that all the members of a partnership owner be set forth. I might note parenthetically that the specific direction as to corporations is necessary as a practical matter since in no other readily available manner could a tenant or governmental representative learn who were the principals with whom he must deal relative to a particular building. On the other hand, with respect to partnership, where, as here, a partnership certificate is filed, the names and addresses of the partners are readily available to all.
In addition, the courts have held that for many purposes a partnership may be deemed to be an entity unto itself. (Jones v Blun, 145 NY 333; Matter of Schwartzman v Miller, 262 App Div 635, affd 288 NY 568; Matter of Ardolino v Ierna, 225 App Div 439; see, also, Matter of A. & A. Holding Corp., 116 NYS 2d 265, affd 281 App Div 657, where it was held that a partnership could demand arbitration in its own name concerning an issue arising out of a lease where the record *829 ownership of the property was in the name of the individuals comprising the partnership).
It is also to be noted that partnerships have been statutorily recognized as separate entities for certain purposes (e.g., CPLR 1025, for purposes of suit; Partnership Law, § 12, subd 3, for purposes of acquiring real property in the partnership name).
Second, even were the partnership designation in the certificate insufficient, I conclude that the setting forth of the full names and addresses of two of the three individuals having an interest in the ownership of the building constitutes substantial compliance with the statutory requirement. Certainly it should be compliance sufficient to enable the petitioner to avoid the harsh sanctions imposed by the statute for failure to fill a registration certificate. In no way can it reasonably be said that the salutary purposes sought to be achieved by registration are frustrated by the omission of the one name.
In the light of the aforesaid, I conclude that the rent demanded in the petition is legally permissible and that the petitioner is not disabled from collecting such rent by reason of the alleged failure to file a proper certificate of registration.
The tenant having consented thereto, the petition is deemed amended to include rent for the months of November and December of 1975 and January and February of 1976 at the rate of $134.86.
Final judgment to be entered in petitioner’s favor for the amount prayed for in the petition as amended with a 10-day stay.
The counterclaims of the respondent are dismissed.